**TIMOTHY H. BELLAS**
Attorney-at-Law
Bank of Hawaii Bldg., Suite 203
P.O. Box 502845
Saipan, MP 96950
Telephone: (670) 323-2115; Fax 323-2116

**ATTORNEY FOR**: Defendant Yang

### IN THE UNITED STATES DISTRICT COURT
### FOR THE
### NORTHERN MARIANA ISLANDS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIMINAL CASE NO. 07-00017-001 |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | SENTENCING MEMORANDUM |
| YANG, JIAN ZHONG, *et al*, | ) | |
| Defendants. | ) | Date: Ocotber 2, 2007 |
| | ) | Time: 10:30 a.m. |
| | | Judge: Alex R. Munson |

This matter is scheduled to come before the Court for sentencing on the date and time specified above. The Court ordered the Pre Sentence Investigation Report (PSR) to be completed by August 28, 2007. The initial PSR was delivered to Defendant Yang's counsel on September 5, 2007. Thereafter the Amended PSR (APSR) and Addendum were delivered to counsel for Defendant on September 27th, 2007. Now, therefore, this is the earliest opportunity for the

1  Defendant to present his Sentencing Memorandum (SM) to the Court. While the necessity for
2  filing the SM in such close proximity to the sentencing hearing was dictated by circumstances
3  beyond the Defendant's control, the Defendant is not adverse to a continuance to give the
4  prosecution an opportunity to respond and the Court the opportunity to consider his arguments
5  more fully.

## COMMENTS OR CORRECTIONS TO APSR

Defendant Yang hereby notes the issues related to the APSR which have already been brought to the attention of AUSA, Mr. O'Malley and to Ms. Borja, the U.S. Probation Officer who authored the APSR, prior to the filing of this Sentencing Memorandum (SM), as noted in the APSR. Both persons indicated to counsel for Defendant Yang that they would investigate the issues raised and correct the issues where appropriate. While the one (1) point adjustment for acceptance of responsibility has been credited within the APSR based on the representation that Mr. O'Malley will make the appropriate motion to the Court, the APSR continues to maintain that the two (2) point increase is applicable under 3B1.1(c). Generally the APSR is accurate with minor exceptions which would not have been significant enough for counsel for Defendant Yang to prepare this SM.[1] However, the two (2) point recommendation under 3B1.1(c) is extremely prejudicial, as will be explained more fully below and necessitated this SM.

---

1   There are also some other minor errors in the APSR. On page 2 of the APSR, where it states that the Defendant's DOB is March 20, 1970 and yet his age is listed as "38" rather than 37. See also bottom of page 4 where "Sentencing:" is listed as "October 9" instead of October 2.

2

**ON BEHALF OF YANG, JIAN ZHONG**

Through counsel, YANG, JIAN ZHONG, files the following Sentencing Memorandum setting forth all factors that the Court should consider in determining what type and length of sentence is sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. § 3553(a). Further Mr. Yang contends that there are sufficient factors for the court to depart from the sentencing guidelines in this case and at a minimum, not to impose the Two (2) point increase recommended by the APSR. Mr. Yang not only was not a supervisor or manager, he was actually a relatively minor participant in the overall activities involved in this matter.

**Sentencing under *Booker***

On January 12, 2005, the Supreme Court ruled that its Sixth Amendment holding in *Blakely v. Washington*, 124 S. Ct. 2531 (2004) and *Apprendi v. New Jersey*, 530 U.S. 466 (2000) applies to the Federal Sentencing Guidelines. *United States v. Booker*, 125 S. Ct. 738, 756 (2005). Given the mandatory nature of the Sentencing Guidelines, the Court found "no relevant distinction between the sentence imposed pursuant to the Washington statutes in *Blakely* and the sentences imposed pursuant to the Federal Sentencing Guidelines" in the cases before the Court. *Id.* at 751. Accordingly, reaffirming its holding in *Apprendi*, the Court concluded that

> [a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt.

3

*Id.* at 756.

Based on this conclusion, the Court further found those provisions of the federal Sentencing Reform Act of 1984 that make the Guidelines mandatory, 18 U.S.C. § 3553(b)(1) or which rely upon the Guidelines's mandatory nature, 18 U.S.C. § 3742(e), incompatible with its Sixth Amendment holding. *Booker*, 125 S. Ct. at 756. Accordingly, the Court severed and excised those provisions, "mak[ing] the Guidelines effectively advisory." *Id.* at 757.

Instead of being bound by the Sentencing Guidelines, the Sentencing Reform Act, as revised by *Booker*,

> requires a sentencing court to consider Guidelines ranges, see 18 U.S.C.A. § 3553(a)(4) (Supp.2004), but it permits the court to tailor the sentence in light of other statutory concerns as well, see § 3553(a).

*Booker*, 125 S. Ct. at 757. Thus, under *Booker*, sentencing courts must treat the guidelines as just one of a number of sentencing factors set forth in 18 U.S.C. § 3553(a).

The primary directive in Section 3553(a) is for sentencing courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2." Section 3553(a)(2) states that such purposes are:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In determining the minimally sufficient sentence, § 3553(a) further directs sentencing

4

courts to consider the following factors:

1) "the nature and circumstances of the offense and the history and characteristics of the defendant" (§ 3553(a)(1);

2) "the kinds of sentences available" (§ 3553(a)(3);

3) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" (§ 3553(a)(6); and

4) "the need to provide restitution to any victims of the offense." (§ 3553(a)(7).

Other statutory sections also give the district court direction in sentencing. Under 18 U.S.C. § 3582, imposition of a term of imprisonment is subject to the following limitation: in determining whether and to what extent imprisonment is appropriate based on the Section 3553(a) factors, the judge is required to "recogniz[e] that imprisonment is *not* an appropriate means of promoting correction and rehabilitation" (emphasis added).

Under 18 U.S.C. § 3661, "*no limitation* shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence" (emphasis added). This statutory language certainly overrides the (now-advisory) policy statements in Part H of the sentencing guidelines, which list as "not ordinarily relevant" to sentencing a variety of factors such as the defendant's age, educational and vocational skills, mental and emotional conditions, drug or alcohol dependence, and lack of guidance as a youth. *See* U.S.S.G. § 5H1. *See also United States v. Nellum*, 2005 WL 300073, 2005 U.S. Dist. LEXIS 1568 (N.D. Ind. Feb. 3, 2005) (Simon, J.) (taking into account fact that defendant, who was 57 at sentencing, would upon his release from prison have a very low likelihood of recidivism since recidivism reduces with age; citing Report of the U.S. Sentencing Commission,

5

Measuring Recidivism: the Criminal History Computation of the Federal Sentencing Guidelines, May 2004); *United States v. Naylor*, 359 F. Supp. 2d 521 (Jones, J.) (concluding that sentence below career offender guideline range was reasonable in part because of defendant's youth when he committed his predicate offenses – he was 17 – and noting that in *Roper v. Simmons,* 125 S. Ct. 1183, 1194-96 (2005), the Supreme Court found significant differences in moral responsibility for crime between adults and juveniles).

The directives of *Booker* and § 3553(a) make clear that courts may no longer routinely apply the guidelines without taking into consideration all circumstances relevant to sentencing. Such an approach would be "inconsistent with the holdings of the merits majority in *Booker*, rejecting mandatory guideline sentences based on judicial fact-finding, and the remedial majority in *Booker*, directing courts to consider all of the § 3353(a) factors, many of which the guidelines either reject or ignore." *United States v. Ranum*, 353 F. Supp. 2d 984, 985-86 (E.D. Wisc. Jan. 19, 2005) (Adelman, J.). As another district court judge has correctly observed, any approach which automatically gives "heavy" weight to the guideline range "comes perilously close to the mandatory regime found to be constitutionally infirm in *Booker*." *United States v. Jaber*, 362 F. Supp. 2d 365, (D. Mass. March 16, 2005) (Gertner, J.). *See also United States v. Ameline*, 400 F.3d 646, 655-56 (9th Cir. Feb. 9, 2005) (advisory guideline range is "only one of many factors that a sentencing judge must consider in determining an appropriate individualized sentence"), *reh'g en banc granted*, 401 F.3d 1007 (9th Cir. 2005).

Justice Scalia explains the point well in his dissent from *Booker*'s remedial holding:

> Thus, logic compels the conclusion that the sentencing judge, after considering the recited factors (including the guidelines), has full discretion, as full as what he possessed before the Act was passed, to sentence anywhere within the statutory range. If the majority thought otherwise – if it thought the Guidelines not only had to be 'considered' (as the amputated statute requires) but had generally to be followed – its opinion would surely say so.

*Booker*, 125 S. Ct. at 791 (Scalia, J., dissenting in part). Likewise, if the remedial majority thought the guidelines had to be given "heavy weight," their opinion would have said so. The remedial majority clearly understood that giving any special weight to the guideline range relative to the other Section 3553(a) factors would violate the Sixth Amendment.

In sum, in every case, a sentencing court must now consider <u>all</u> of the § 3553(a) factors, not just the guidelines, in determining a sentence that is sufficient but not greater than necessary to meet the goals of sentencing. And where the guidelines conflict with other sentencing factors set forth in § 3553(a), these statutory sentencing factors should generally trump the guidelines. *See United States v. Denardi*, 892 F.2d 269, 276-77 (3d Cir. 1989) (Becker, J, concurring in part, dissenting in part) (arguing that since § 3553(a) requires sentence be no greater than necessary to meet four purposes of sentencing, imposition of sentence greater than necessary to meet those purposes violates statute and is reversible, even if within guideline range).

**<u>Application of the Statutory Sentencing Factors</u>**
**<u>to the Facts of this Case</u>**

In the present case, the following factors must be considered when determining what

7

type and length of sentence is sufficient, but not greater than necessary, to satisfy the purposes of sentencing:

**1.      The Nature and Circumstances of the Offense and the History and Characteristics of the Offender**

    **(a) Nature and Circumstances of Offense**

The Defendant comes before the court for sentencing with no prior criminal history and the entire conduct which the government alleges he participated in spans a relatively short period of time from January 25th to August 11th, 2005. Furthermore, there are no other alleged incidents involving the Defendant even though he was not arrested and detained until May, 2007. The defendant will testify that he received $100 for each of the transactions in which he participated in the above described period.

    **(b) History and Characteristics of Mr. Yang**

As the Court will hear from the testimony to be presented at the sentencing hearing, Mr. Yang is another of those unfortunate persons who fell between the regulatory chasms of the CNMI non resident worker program. Faced with very few economic opportunities in his own country and with a limited formal education, which ended when he was Fifteen (15) years old, he came to Saipan with the promise of employment opportunities and a better future for his family in 1997. He left behind, in China, his wife and two (2) children who were two (2) and four (4) years old at the time. He has been here since then with the exception, of a short trip back to China in 2006. When Mr. Yang returned to China his purpose was in part to see his father who was ill with cancer and actually passed away in February of this year. The other

8

1  was to see his children who were then Eleven (11) and (14) years old. Yet despite the relatively
2  long period of time that Mr. Yang remained in the CNMI, he had to borrow most of the funds
3  with which to make the trip back to China and in order to purchase some gifts for his family
4  members. Hardly, the successful financial picture that lured him to seek out employment in a
5  place so far from his family.
6
7  Is the Defendant attempting to elicit the compassion and mercy of the Court? Perhaps,
8  but the facts to be testified to also point out the utter lack of any financial resources of the
9  Defendant. Defendant contends that the information is relevant, at least as circumstantial
10 evidence that, if Mr. Yang were a "supervisor" or had any significant management of the drug
11 activities of some organized drug operation he would certainly have been in better financial
12 condition than the facts testified to suggest.
13
14 **2.    The Need for the Sentence Imposed To Promote Certain Statutory Objectives**:

15   (A) *To reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense*;
16
17 Counsel will not suggest to the Court that drug offenses are not serious and that they do
18 not cause problems within any given community. However, even within that context and even
19 though the Defendant did participate in more than one or two transactions, the relative scope of
20 his participation and the quantity of drugs involved are not significant.
21   (B) *To afford adequate deterrence to criminal conduct*;
22
23 The range of potential incarceration faced by this Defendant, even after a correct
24 determination that the Defendant was not an organizer, manager or supervisor and even with a

9

downward departure is clearly a significant length of time to spend behind bars. The interests of justice will be served by that reduced length of incarceration and no rational person would risk the loss of their liberty for a period of years for the potential gain of Six Hundred Dollars ($600).

(C) *To protect the public from further crimes of the defendant*;

The Defendant, as stated in the APSR, is a non resident worker and his immigration status in the CNMI is governed by the laws who brought him here. Assuming that immigration authority is still within the control of the CNMI Government when the Defendant is released, he will be a deportable alien under 3 CMC § 4340 (d); since he will have the instant felony conviction on his record. Therefore, it will be a physical impossibility for the Defendant to perpetrate further crimes against members of the public in this community if it will no longer be possible for him to reside in this community.

(D) *To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner*;

This subcategory would seem inapplicable to this Defendant, since he is not a drug user.

3.     **The Kinds of Sentences Available**

The Defendant does not dispute that the sentencing options available to the Court as stated in paragraph 72 of the APSR are appropriate based on the statutory provisions applicable to the offense for which this Defendant has pled guilty.

4.     **The Sentencing Range Established by the Sentencing Commission**

The Defendant contends that by eliminating the Two (2) point enhancement suggested by the APSR, the Defendant's correct Total Offense Level would be Twenty Three (23) thus placing him in a guideline range of 46-57 months.

However, more significantly, eliminating the 3B1.1(c) enhancement would also make the Defendant eligible for a downward departure from the statutory minimum as provided under §5C1.2.

As stated in 2D1.1(b)(9) of the Guidelines "If the defendant meets the criteria set forth in subdivisions (1)-(5) of subsection (a) of §5C1.2 (Limitation on Applicability of Statutory Minimum Sentences in Certain Cases), decrease by 2 levels." Thus, the Defendant would be entitled to an additional decrease of two points bringing his total offense level to Twenty-One (21) placing him in a guideline range of 37-46 months. The criteria of subsection (a) of §5C1.2 is:

   (1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines before application of subsection (b) of §4A1.3 (Departures Based on Inadequacy of Criminal History Category);

   (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

   (3) the offense did not result in death or serious bodily injury to any person;

   (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848; and

11

(5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

The only one of the above listed items which causes the Defendant to be unqualified for this reduction and the departure from the statutory minimum is requirement #4 of the subsection. Namely, the APSR finding that the defendant is an organizer, leader, manager, or supervisor of others in the offense.

The Addendum to the APSR specifically states that the finding that this defendant was an organizer, leader, manager, or supervisor of others is largely based on Paragraph 28 of the APSR. Paragraph 28 is based on the "Report of Investigation" dated April 26, 2005, a copy of which is attached hereto as Exhibit 1 and fully incorporated by this reference. This is not an actual statement by Ms. Oingerang (the person who Mr. Yang purportedly supervised) but a summary of "Drug Related Information" which was gathered by the agent from his contact with Ms. Oingerang. It must be remembered that the April 26th 2005 contact with Ms. Oingerang was the first time that law enforcement confronted her with her illegal drug sales activities, namely that she had made more than one sale of meth to the government's Confidential Source. Thus, even assuming that the agent's characterization of her statements was entirely accurate, would it be a natural reaction for Ms. Oingerang to claim that her participation was entirely someone else's idea or fault?

In contrast, Exhibits 2 and 3 are actual statements of Ms. Oingerang when she made actual "buys" of drugs for law enforcement from the Defendant. These statements do not contain any evidence of any actions or statements by the Defendant which would indicate that he was an organizer, leader, manager, or supervisor of Ms. Oingerang. In fact these statements reveal that the Defendant was merely delivering the drugs and receiving payment. These statements must further be weighed against the backdrop of Defendant's in Court testimony.

**Objection to Application of Mandatory Minimum Sentence
on Basis of Facts not Proven to Jury or Admitted by Defendant
On the Ground that the Enhancement is Unconstitutional**

The application of the mandatory minimum penalty under 21 U.S.C. § 841(a)(1), (b)(1)(B) and 846 is unconstitutional on its face and as applied in this case. The rule of *Apprendi v. New Jersey*, 530 U.S. 466 (1998), barring increases in the sentencing range based on judge-found facts not proven to the jury beyond a reasonable doubt or admitted by the defendant, should apply equally to facts that increase the minimum as well as the maximum sentence. As Justice Thomas explained, "Whether one raises the floor or raises the ceiling it is impossible to dispute that the defendant is exposed to greater punishment than is otherwise prescribed." *Harris v. United States*, 536 U.S. 545, 579 (2002) (Thomas, J., dissenting).

Although the majority in *Harris* upheld the application of such mandatory minimum penalties, *id.* at 567-68, *Harris* was decided by a 5 to 4 vote, in which one of the five majority justices was Justice Breyer, who candidly acknowledged that this holding could not logically

13

be squared with *Apprendi*. Breyer nonetheless concurred in the result because he could not "yet accept" *Apprendi's* rule. *Id.* at 569. Since Breyer's remedy opinion in *Booker* was predicated on the application of *Apprendi's* rule to the federal guidelines, he presumably does now accept its rule. The continued vitality of *Harris*, therefore, appears doubtful.

In the instant case, the facts necessary for the application of the mandatory minimum penalty were admitted by the Defendant as to the amount of methamphetamines involved which were greater than Five (5) grams. The Defendant, however, has never admitted nor has it been proven that he was a manager or supervisor. On the contrary he vehemently denies that characterization of his role in the matter. Therefore, since the Guidelines provide the Court with the discretion to depart from the statutory mandatory minimum, the operative facts which allegedly disqualify the Defendant from receiving that two (2) point reduction and the ability to receive a downward departure from the statutory minimum cause him great prejudice and therefore, the facts necessary to establish his disqualification should be proven to the higher standards of proof mandated by *Apprendi*.

**Proposed "Statement of Reasons Pursuant to 18 U.S.C. § 3553(c)"
for sentence below the Statutory Minimum.**

Pursuant to 18 U.S.C. § 3553(c) the Defendant respectfully requests that the Court find:

That as a practical matter the actual factual circumstances do not support a finding that the Defendant was an organizer, leader, manager, or supervisor of another. Secondly, if the Court were to accept that those factual allegations are sufficient, the level of proof necessary to sustain that factual finding that the

14

Defendant was an organizer, leader, manager, or supervisor of another was not met by the mere adoption of the Report of Investigation language in the Amended Pre-Sentence Report. In order to expose the Defendant to the substantial increase in the applicable guideline range of incarceration contemplated by finding him an organizer, leader, manager, or supervisor of another, a higher level of proof is necessary.

Defendant further respectfully requests that the Court, pursuant to § 3553(c) adopt this or similar language and include it in the judgment and commitment order.

**Conclusion**

For the foregoing reasons, Defendant YANG, JIAN ZHONG respectfully submits that a sentence of between 37 to 46 months of incarceration is sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. § 3553(a).

Respectfully submitted,

Dated this 30th day of September, 2007.

_____/s/_____
Timothy H. Bellas, F-0135 Attorney for Defendant Yang